IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:11-cv-21756-SEITZ/SIMONTON

MARCIA DUNN, Bankruptcy Trustee,

        Plaintiff,

v.

WAL-MART STORES EAST, L.P.,

        Defendant.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Wal-Mart's Motion for Final Summary Judgment [DE-49]. Plaintiff's[1] Amended Complaint alleges claims of retaliation in violation of Title VII, the Florida Civil Rights Act, and 42 U.S.C. § 1981. Plaintiff, an Assistant Manager for Defendant, asserts that after she relayed complaints of race discrimination to higher management, she suffered adverse employment actions, starting with complaints about her job performance and culminating in her termination.

Defendant has moved for summary judgment on all counts arguing that Plaintiff cannot establish her prima facie case and, even if she could, Defendant has a legitimate, non-discriminatory reason for its actions. Plaintiff has filed a response [DE-55] and Defendant has filed a reply [DE-63]. Considering the record in the light most favorable to Plaintiff, she has not established a prima facie case of retaliation because she has not established that she engaged in protected activity. Consequently, Defendant's motion is granted.

---

[1]The Court uses the term "Plaintiff" to refer to Daisy Berrios, not Marcia Dunn, the Bankruptcy Trustee, who was substituted as Plaintiff after Ms. Berrios filed bankruptcy.

I.  **UNDISPUTED MATERIAL FACTS**[2]

Plaintiff was hired by Defendant on April 14, 2000, as an hourly Associate. In September 2005, Plaintiff entered Defendant's Management Trainee Program and was promoted to an assistant manager position on January 7, 2006. Plaintiff remained an assistant manager until her termination on July 20, 2010. Plaintiff alleges that she was terminated in retaliation for reporting claims of discrimination by other workers to higher management.

During the course of her employment, Plaintiff worked in several stores. On July 4, 2009, she was transferred to store #3235 in North Miami Beach, Florida. Claudine Elvin was the store manager of store #3235 and Elvin specifically selected Plaintiff to be part of her management team. (Pl. Dep.[3] 105:10-24.) At the time, store #3235 had a new management team because Defendant wanted to increase Associate morale and satisfaction and avoid unionization. (*Id.* at 106:18-23.) The management team, in hierarchical order, consisted of the store manager, Elvin, three co-managers, also known as shift managers, and several assistant managers, one of whom was Plaintiff. (*Id.* at 133:6-134:2.)

---

[2] Plaintiff's Statement of Disputed Material Facts [DE-54] does not comply with this District's Local Rules. It is single spaced and substantially exceeds the ten page limitation. Plaintiff did not properly seek leave of Court to file her non-compliant Statement; instead, she sought leave in a footnote in the Statement. Further, Plaintiff's response to the motion for summary judgment also exceeds the page limitation and does not comply with the District's formatting rules. As a member of the Southern District of Florida Bar, Plaintiff's counsel is required to be familiar with the Local Rules and to comply with them.

[3] Pl. Dep. refers to Plaintiff's Deposition, which is filed at DE-50-3 and 50-4. Pl. Dep. Cont. shall refer to Plaintiff's second or continued deposition which is filed at DE-50-5.

*Defendant's Policies*[4]

Defendant has an Open Door Policy that provides that, if an Associate has a problem, he or she can talk to any member of management. (DE-50-1.) Thus, an Associate does not have to follow a specific chain of command when expressing a concern or a complaint. (*Id.*) Defendant also has a Discrimination & Harassment Prevention Policy which states that Defendant will not tolerate any form of discrimination or harassment. (DE-50-2.) Pursuant to the Discrimination & Harassment Prevention Policy:

> If [Managers] observe, receive a report, or otherwise become aware of a possible violation of this policy, you must immediately report such conduct to the *appropriate level of management* for investigation. A salaried member of management who fails to report a violation of this policy may be subject to discipline, up to and including termination.
>
> *Appropriate level of management* includes, but is not limited to, the Field Logistics Human Resources Manager, Employment Advisor, Market Human Resources Manager, Regional Human Resources Manager, or People Director.

(*Id.* (emphasis in original).)

In addition to the Open Door Policy and the Discrimination & Harassment Prevention Policy, Defendant has a Labor Relations department. If a manager becomes aware of a labor issue, he or she is required to report the issue to Labor Relations. (Pl. Dep. 102:10-23.) The purpose of Labor Relations is to ensure Associate satisfaction in order to avoid unionization.

---

[4]Plaintiff's Statement of Disputed Facts [DE-54] states that Defendant had different policies than those set out in Defendant's written policies. Specifically, Plaintiff states that, with regards to claims of discrimination, the policy was for an assistant manager to report the discrimination to the store manager or a co-manager. *See* DE-54 at 2, ¶5. However, the evidence cited by Plaintiff, the depositions of Joan Grey and Shirley Ann Neil, does not support the existence of a separate policy that claims of discrimination were to be reported to in-store management. The depositions, instead, discuss the process that a store follows after a manager or co-manager has become aware of a discrimination complaint. *See* Grey Dep. at 14:23-16:23 and Neil Dep at 124:20-128:19.

3

(*Id.* at 103:18-104:16.) Therefore, management was required to report any Associate dissatisfaction or any talk about potential unionization to Labor Relations. (*Id.* at 104:17-22.)

Once a complaint of discrimination or harassment is received, an investigation called a "Red Book" is opened. (Grey Dep.[5] 15:10-11; Elvin Dep. at 180:18-25.) The Red Book investigation is usually done by the store manager or the shift manager, who would be responsible for investigating the complaint and sending the information to the proper authorities outside the store. (Neil Dep.[6] 126:2-20.)

*Associate Complaints*

At some point in early 2010, three Associates approached Plaintiff, as a member of management, with complaints about double standards and discrimination. (Pl. Dep. 107:21-25.) As a member of management, Plaintiff was responsible for reporting such complaints to the proper resources within the company. (*Id.* at 108:5-12.) According to Plaintiff's testimony, once an Associate complained of discrimination, Plaintiff's job duty was to report the complaint to the shift manager or store manager. (Pl. Dep. Cont. at 48:9-15.) Plaintiff, however, did not do that when she received the Associates' complaints; instead, she called Labor Relations. Plaintiff called Labor Relations twice to report the Associates' complaints. (Pl. Dep. at 110:14-18; 111:7-17.) Plaintiff's first call to Labor Relations related to a complaint of discrimination by

---

[5] Grey Dep. refers to the deposition of Joan Grey, a human resources manager for Defendant, filed at DE-54-1.

[6] Neil Dep. refers to the deposition of Shirley Ann Neil, a shift manager of store #3235. The deposition is filed at 54-3.

4

Sales Associate Tamara Sotolongo.[7] (*Id.* at 112:4-12.) After calling Labor Relations about Associate Sotolongo, Plaintiff was not involved in any other way with the handling or investigation of the complaint. (*Id.* at 119:19-120:11.)

Plaintiff's second phone call to Labor Relations was in response to complaints of discrimination and favoritism from Sales Associates Estella Cruz and Jeanette Cordoba.[8] (*Id.* at 122:2-8.) When the Associates approached Plaintiff, they told her about the discrimination but also stated that they were not in the union yet, but they could do it. (Pl. Dep. Cont. at 54:3-6.) Plaintiff made the call to Labor Relations because of her duties and obligations as a manager. (Pl. Dep. at 128:6-10.) When Plaintiff called Labor Relations, she had no personal knowledge about the alleged discrimination that the Associates reported to Plaintiff and Plaintiff did not investigate the complaints. (*Id.* at 139:7-17; 140:21-141:21.) However, according to Plaintiff, before calling Labor Relations, Plaintiff walked with these two Associates to check their work schedules to see if there appeared to be favoritism in the scheduling. (Pl. Dep. Cont. 53:1-12.) When Plaintiff spoke to Labor Relations, she was instructed to call a meeting of the store managers to discuss the Associates' complaints. (Pl. Dep. at 127:3-11.) Plaintiff convened the meeting, in the manager's office, and relayed the conversation with Labor Relations and the Associates' complaints to the other managers, including Elvin. (*Id.* at 129:4-13.)

---

[7] According to Plaintiff, Sotolongo complained that Elvin had discriminated against her by moving her to another department because she did not speak enough English. Ms. Sotolongo, however had to train her replacement and she had had a decrease in her hourly pay. (Pl. Dep at 113:4-114:10.)

[8] According to Plaintiff, Cruz and Cordoba complained that Elvin was showing favoritism towards Blacks and was discriminating against Hispanics, that they had not been paid properly for working overnight, that their hours had been cut, and that they were worked harder than the Black employees. (Pl. Dep. 123:19-124:15.

A couple of days after the meeting, Plaintiff was called to Elvin's office. (*Id.* at 132:6-16.) Plaintiff testified about the conversation with Elvin as follows:

> The store manager said to me that I was never to dare to go over her head to talk about any complaint because – – that would happen in her store, because that was her store. That I had – – I was not supposed to have called the labor team for the issues that were going on in her store. She said the worse thing I had ever done was to go over her head. . . . And to lower my position because she was promising me that she was going to leave me jobless with no bread on the table and that she was giving me an opportunity to keep a job.

(*Id.* at 135:6-18.) Elvin denies that such a conversation took place. (Elvin Dep.[9] 269:6-12.)

*Termination and After*

After Plaintiff met with Elvin and Elvin allegedly threatened Plaintiff, Plaintiff alleges that she started to receive negative feedback about her work and was ultimately terminated, as a result.[10] After Plaintiff was terminated, on July 23, 2010, Plaintiff filed a charge of

---

[9] Elvin Dep. refers to the deposition of Claudine Elvin filed at DE-50-18, 50-19, and 50-20.

[10] Because the Court finds that Plaintiff has failed to present evidence to support her prima facie case, the facts regarding Plaintiff's job performance and her evaluations are not relevant to the Court's analysis. However, the Court includes a summary of those facts for purposes of painting a more complete picture.

While Plaintiff appears to argue that prior to her contact with Labor Relations she had not received any negative feedback, Plaintiff did receive some negative comments and "below expectations" or "Development Needed" ratings on her annual reviews prior to contacting Labor Relations. (DE-50-10, DE-50-11, DE-50-12.) However, the annual reviews also included positive comments and some "exceeds expectations" ratings. (*Id.*) After Plaintiff made the calls to Labor Relations, Plaintiff received a verbal coaching (DE-50-13) and then a written coaching from an Assistant Manager (DE-50-14). Plaintiff was then placed on a Performance Improvement Plan (PIP) because she was not meeting expectations. (Pl. Dep. Cont. at 5:2-6; 5:12-16.) Plaintiff received "Below Expectations" ratings on her three PIP follow-ups. (DE-50-15, DE-50-16 & DE-50-17.) At the third follow-up, Elvin extended Plaintiff's PIP for an additional two weeks. (DE-50-17.) Although Plaintiff was subject to termination as a result of the PIP follow-ups, Plaintiff was placed on a second PIP. (DE-50-22.)

Two days later, on April 24, 2010, Plaintiff received her 2010 performance evaluation from Shift Manager William Perera because Elvin was on maternity leave. (DE-50-23.) Plaintiff received an evaluation of "solid performer" from Perera. (*Id.*) The evaluation, however, states that it was issued by

6

discrimination with the United States Equal Employment Opportunity Commission (EEOC). Plaintiff's EEOC charge alleges that Elvin retaliated against Plaintiff after Plaintiff discussed with Elvin the Associates' concerns of discrimination and preferential treatment. (DE-50-25.) In her Pre-Determination Interview with the EEOC, Plaintiff acknowledged that she had problems performing some of her job duties. (DE-50-26.)

On May 13, 2011, Plaintiff filed her initial complaint in this matter. (DE-1.) In her *pro se* complaint, Plaintiff alleges that she was retaliated against after she called Labor Relations on two occasions to relay Associate concerns. Plaintiff's amended complaint also alleges retaliation based on her phone calls to Labor Relations and after she "confronted the Store Manager to discuss those complaints and oppose such unfair practices towards the Hispanic employees." (DE-18 at ¶6.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the

---

Elvin. (*Id.*) Plaintiff had two follow-up sessions related to the second PIP and both found that Plaintiff met expectations. (DE-54-4 & DE-54-5.) On July 20, 2010, Elvin terminated Plaintiff because Plaintiff had failed to ensure that the meat case was fully stocked. (DE-50-24; Pl. Dep. Cont. 33:7-19.)

non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. DISCUSSION

Defendant maintains that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case of retaliation and because Defendant has a legitimate, non-retaliatory reason for terminating Plaintiff. Plaintiff responds that Defendant is not entitled to summary judgment because she has presented direct evidence of retaliation, she can establish her prima facie case, and Defendant's proffered legitimate, non-retaliatory reason for terminating Plaintiff is pretextual.

Plaintiff and Defendant disagree about whether Plaintiff has presented direct or circumstantial evidence of the alleged retaliation. Plaintiff asserts that she has presented direct evidence of the relation, while Defendant asserts that any evidence of retaliation is circumstantial. The type of evidence determines the method of analysis the Court must apply.

If a plaintiff establishes by direct evidence that a retaliatory animus played a significant role in the employment decision, then the employer will be liable for retaliation unless it can establish that the employer would have made the same decision absent the retaliatory motive. *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 931 (11th Cir. 1995). However, if a plaintiff's claim is based on circumstantial evidence, a court uses the burden shifting analysis set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell-Douglas*, a plaintiff has the burden of establishing a prima facie case of retaliation. *Id.* at 802. A plaintiff establishes a prima facie case by establishing: (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression. *Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006). The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Wilson v. B/E Aerospace, Inc.* 376 F.3d 1079, 1087 (11th Cir. 2004). If the employer meets this burden, then the burden shifts back to the plaintiff to offer evidence that the alleged reason given by the employer is a pretext for illegal retaliation. *Id.* Because, as set out below, Plaintiff has not presented direct evidence of retaliation, she must establish her case using the *McDonnell-Douglas* burden-shifting analysis.

### A. Plaintiff Has Not Presented Any Direct Evidence of Retaliation

While Defendant maintains that the *McDonnell-Douglas* framework applies to this case, Plaintiff argues that she has presented direct evidence of discrimination and, therefore, she need not establish a prima facie case under *McDonnell-Douglas*. Specifically, Plaintiff alleges that Elvin said that Plaintiff "was never to dare to go over [Elvin's] head to talk about any complaint . . . because that was her store. That anything that happened, [Plaintiff] had to go to through

[Elvin]. . . .[S]he was promising me that she was going to leave me jobless with no bread on the table." Plaintiff argues that this statement constitutes direct evidence of discrimination. *See* DE-55 at 2 & DE-54 at 11, ¶12.

The Eleventh Circuit defines "direct evidence" as "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson*, 376 F.3d at 1086 (internal quotations omitted). If the statement only suggests, but does not prove, a discriminatory motive, then it constitutes circumstantial evidence. *Id.*

Here, Elvin's statement is not direct evidence of an impermissible retaliatory intent. It is not clear from the statement whether Elvin's statement was made because Plaintiff complained of discrimination or because Plaintiff went over Elvin's head to make a complaint. If Elvin made the threat because Plaintiff went over Elvin's head to register a complaint, not because of the type of complaint, Elvin's statement would not clearly demonstrate an intent to retaliate based on an impermissible motive. Thus, because Elvin's statement does not directly establish the existence of an impermissible retaliatory intent without inference or presumption, it is not direct evidence of an impermissible retaliatory motive. *Compare Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (finding that the statement by decision-maker, "what the company needed was aggressive *young* men . . . to be promoted" did not constitute direct evidence of age discrimination), *and Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (holding that statement by

decision-maker that he wanted to hire a man for the position because too many women filled the officer positions was not direct evidence of gender discrimination), *with Caban-Wheeler v. Elsea*, 71 F.3d 837, 843 (11th Cir. 1996) (finding that statement by decision-maker that he did not want someone like plaintiff in position but wanted a Black person in position constitutes direct evidence of race discrimination). Consequently, Plaintiff's claims must be analyzed under the *McDonnell-Douglas* framework.

### B. Plaintiff Did Not Partake in Protected Activity

All of Plaintiff's claims rest on whether her termination was causally connected to her engagement in "protected activity," as that term is defined by Title VII of the federal Civil Rights Act. Under Title VII it is

> unlawful . . . for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). This section has been interpreted as setting out two types of protected activity: (1) opposing unlawful employment practices and (2) making a charge or participating in an investigation or proceeding. *Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 55 U.S. 271, 274 (2009). Defendant asserts that Plaintiff cannot establish a claim under either the participation clause or the opposition clause.

#### i. *Plaintiff Cannot Establish a Claim Under the Participation Clause*

Defendant argues that Plaintiff cannot establish a claim under the participation clause because such a claim arises only from "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the

11

EEOC." *E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). There is no question that, at the time Plaintiff relayed the complaints, no EEOC charge had been filed. Thus, Defendant maintains that Plaintiff cannot establish a claim under the participation clause.

Plaintiff does not dispute that no EEOC charge was filed. However, Plaintiff asserts that the holding of *Total System* may no longer be good law because of subsequent Supreme Court decisions. However, Plaintiff has not explained how those decisions change the Eleventh Circuit's holding that the filing of an EEOC charge is a requirement of a claim under the participation clause. Furthermore, the Eleventh Circuit recognized this argument and declined to address it by noting that "under the prior panel precedent rule, we are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court." *Brush v. Sears Holding Corp.*, 466 Fed. App'x 781, 785 n.5 (11th Cir. 2012). None of the Supreme Court cases cited by Plaintiff clearly overrule the EEOC charge requirement of the participation clause. In fact, the cases relied upon by Plaintiff each address issues other than the EEOC charge requirement. *See Thompson v. North American Stainless, LP*, – U.S. –, 131 S. Ct. 863 (2011) (holding a fiancée who was allegedly fired in retaliation after his fiancé filed a charge of discrimination with the EEOC has standing to sue under Title VII as an aggrieved person); *Kasten v. Saint-Gobain Performance Plastics Corp.*, – U.S. –, 131 S. Ct. 1325 (2011) (holding that the anti-retaliation provision of the FLSA includes oral complaints to employer); *Crawford v. v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 555 U.S. 271 (2009) (holding that the opposition clause covered an employee who spoke out about sexual harassment by answering questions during an interview, but not on her own initiative, during

employer's internal investigation of a harassment complaint). Thus, under Eleventh Circuit law, Plaintiff has failed to establish a claim under the participation clause.

### ii. *Plaintiff Cannot Establish a Claim Under the Opposition Clause*

Defendant also argues that Plaintiff cannot establish a claim under the opposition clause because Plaintiff did not have a subjectively and/or an objectively reasonable good faith belief that Defendant engaged in unlawful employment practices and because Plaintiff did not partake in statutorily protected activity when she reported the alleged discriminatory actions as part of her job responsibilities. Plaintiff responds that she has shown that she had a subjectively and objectively reasonable good faith belief that Defendant had engaged in unlawful employment practices. Plaintiff further responds that the so-called "Manager Rule" is not still viable after the Supreme Court's *Crawford* decision and, even if it were, she was acting outside of her job responsibilities when she reported the complaints to the Labor Relations department.

In *Crawford*, the Supreme Court noted that the term "oppose," as used in Title VII, means "to resist or antagonize ...; to contend against; to confront; resist; withstand." 555 U.S. at 276. With this definition in mind, in *Brush v. Sears Holding Corp.*, 466 Fed. App'x 781, 787 (11th Cir. 2012), the Eleventh Circuit applied the "Manager Rule" which holds that a management employee who, in the course of her normal job performance, disagrees or opposes the actions of an employer does not engage in protected activity under Title VII. To "qualify as 'protected activity' an employee must cross the line from being an employee 'performing her job . . . to an employee lodging a personal complaint.'" *Id.* (quoting *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) (stating that an employee is not "insulated from retaliation for participating in activities which are neither adverse to the company nor supportive of adverse

13

rights under the statute which are asserted against the company")); *see also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 628 (5th Cir. 2008) (holding that voicing employee concerns is not adverse to a company's interests but is exactly what is expected of a manager; otherwise nearly every activity in the normal course of a manager's job would potentially be protected activity). While Plaintiff argues that the Supreme Court's decision in *Crawford* "eviscerated" the Manager Rule, *Brush* was decided more than two years after *Crawford* and *Brush* explicitly rejected that argument. *Brush*, 466 Fed. App'x at 787 (stating that *Crawford* has not foreclosed the Manager Rule).

Defendant argues that Plaintiff's actions were not protected activity because passing on the Associates' complaints of discrimination was part of her job responsibilities. Under the Open Door Policy, Plaintiff was required to receive any Associate complaints. Defendant's Discrimination & Harassment Prevention Policy requires a manager who receives a report of a possible violation of the policy to "immediately report such conduct to the *appropriate level of management* for investigation." (emphasis in original). A failure to report by a member of management can result in termination. The Policy states that the "appropriate level of management" includes the Field Logistics Human Resources Manager, Employment Advisor, Market Human Resources Manager, Regional Human Resources Manager, or People Director. Thus, as part of her job responsibilities, Plaintiff had to receive Associate complaints and pass the complaints on to the appropriate manager. This is exactly what Plaintiff did. There is no evidence that Plaintiff did anything more than pass on the Associate complaints. There is no evidence that in reporting the complaints she expressed any agreement with the substance of the complaints or that she took a position in-line with the Associates. Plaintiff simply relayed a

14

message, as she was required to do as an Assistant Manager. Under the definition of "oppose" set out in *Crawford*, relaying a message that one is required to relay by her job responsibilities does not amount to a protected activity.

While Plaintiff argues that she went beyond her job duties by reporting the discrimination to Labor Relations, Defendant's written policies indicate otherwise. Plaintiff maintains that her responsibility was to report the Associates' complaints of discrimination to her store manager, Elvin, or a co-manager and by going over Elvin's head and reporting to Labor Relations Plaintiff took an adverse position to Defendant. *See* DE-55 at 12. Thus, Plaintiff argues that she was partaking in protected activity. However, Defendant's written policy required Plaintiff to report any discrimination to people outside the immediate store hierarchy. Defendant's Discrimination & Harassment Prevention Policy does not list the store manager or co-managers as an "appropriate level of management" for reporting claims of discrimination. Furthermore, Plaintiff testified that the complaining Associates mentioned the union when they complained. Thus, under Defendant's policies, Plaintiff was obligated to report the complaints to Labor Relations. Consequently, despite Plaintiff's testimony, Plaintiff did not step "outside of her assigned responsibility," or cross the line from performing her job to lodging a personal complaint, when she went over the store level management to report the claims of discrimination to Labor Relations. In fact, she was acting within her responsibilities and Plaintiff recognized that when she testified that she could be subject to discipline if she failed to report the discrimination. *See* Pl. Dep. 101:17-102:3; 119:23-120:1. Because Plaintiff cannot establish that she partook in protected activity, Plaintiff cannot establish an essential element of her prima

facie case under the opposition clause. Because Plaintiff has failed to establish her prima facie case, the Court need not address the rest of the *McDonnell-Douglas* analysis.

Accordingly, it is hereby

ORDERED that:

1. Defendant Wal-Mart's Motion for Final Summary Judgment [DE-49] is GRANTED.

2. All pending motions not otherwise ruled upon are DENIED as moot.

3. The Court will enter a separate judgment.

4. This case is CLOSED.

DONE and ORDERED in Miami, Florida, on this 8th day of April, 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

Copies to    All Counsel of Record